IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

**MITZI HATHAWAY**,                                              Civil Case No. 3:10-CV-01265-KI

                    Plaintiff,                                   OPINION AND ORDER

          vs.

**MICHAEL ASTRUE**,
Commissioner of Social Security,

                    Defendant.


          Merrill Schneider
          Schneider Law Offices
          P. O. Box 14490
          Portland, Oregon  97293

                    Attorney for Plaintiff

          Dwight C. Holton
          United States Attorney
          District of Oregon


Page 1 - OPINION AND ORDER

Adrian L. Brown
Assistant United States Attorney
1000 SW Third Avenue, Suite 600
Portland, Oregon 97201-2902

Leisa A. Wolf
Special Assistant United States Attorney
Office of the General Counsel
Social Security Administration
701 Fifth Avenue, Suite 2900 M/S 221A
Seattle, Washington 98104-7075

      Attorneys for Defendants

King, Judge:

Plaintiff Mitzi Hathaway brings this action pursuant to section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the Commissioner denying plaintiff's application for disability insurance benefits ("DIB") and supplemental security income benefits ("SSI"). I reverse the decision of the Commissioner and remand for further proceedings.

## DISABILITY ANALYSIS

The Social Security Act (the "Act") provides for payment of disability insurance benefits to people who have contributed to the Social Security program and who suffer from a physical or mental disability. 42 U.S.C. § 423(a)(1). In addition, under the Act, supplemental security income benefits may be available to individuals who are age 65 or over, blind, or disabled, but who do not have insured status under the Act. 42 U.S.C. § 1382(a).

The claimant must demonstrate an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to cause

Page 2 - OPINION AND ORDER

death or to last for a continuous period of at least twelve months.  42 U.S.C. §§ 423(d)(1)(A) and

1382c(a)(3)(A).  An individual will be determined to be disabled only if his physical or mental

impairments are of such severity that he is not only unable to do his previous work but cannot,

considering his age, education, and work experience, engage in any other kind of substantial gainful

work which exists in the national economy.  42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B).

The Commissioner has established a five-step sequential evaluation process for determining

if a person is eligible for either DIB or SSI due to disability.  The evaluation is carried out by the

Administrative Law Judge ("ALJ").  The claimant has the burden of proof on the first four steps.

Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007); 20 C.F.R. §§ 404.1520 and 416.920.  First, the

ALJ determines whether the claimant is engaged in "substantial gainful activity."  If the claimant is

engaged in such activity, disability benefits are denied.  Otherwise, the ALJ proceeds to step two and

determines whether the claimant has a medically severe impairment or combination of impairments.

A severe impairment is one "which significantly limits [the claimant's] physical or mental ability

to do basic work activities."  20 C.F.R. §§ 404.1520(c) and 416.920(c).  If the claimant does not have

a severe impairment or combination of impairments, disability benefits are denied.

If the impairment is severe, the ALJ proceeds to the third step to determine whether the

impairment is equivalent to one of a number of listed impairments that the Commissioner

acknowledges are so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d) and

416.920(d).  If the impairment meets or equals one of the listed impairments, the claimant is

conclusively presumed to be disabled.  If the impairment is not one that is presumed to be disabling,

the ALJ proceeds to the fourth step to determine whether the impairment prevents the claimant from

performing work which the claimant performed in the past.  If the claimant is able to perform work

she performed in the past, a finding of "not disabled" is made and disability benefits are denied. 20 C.F.R. §§ 404.1520(e) and 416.920(e).

If the claimant is unable to perform work performed in the past, the ALJ proceeds to the fifth and final step to determine if the claimant can perform other work in the national economy in light of his age, education, and work experience. The burden shifts to the Commissioner to show what gainful work activities are within the claimant's capabilities. Parra, 481 F.3d at 746. The claimant is entitled to disability benefits only if he is unable to perform other work. 20 C.F.R. §§ 404.1520(f) and 416.920(f).

## STANDARD OF REVIEW

The court must affirm a denial of benefits if the denial is supported by substantial evidence and is based on correct legal standards. Bayliss v. Barnhart, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005). Substantial evidence is more than a "mere scintilla" of the evidence but less than a preponderance. Id. "[T]he commissioner's findings are upheld if supported by inferences reasonably drawn from the record, and if evidence exists to support more than one rational interpretation, we must defer to the Commissioner's decision." Batson v. Barnhart, 359 F.3d 1190, 1193 (9th Cir. 2004) (internal citations omitted).

## THE ALJ'S DECISION

The ALJ found that Hathaway had severe impairments of chronic obstructive pulmonary disease, obesity, sleep apnea, bilateral carpal tunnel syndrome post surgery on the left, degenerative disc disease of the lumbar spine, fibromyalgia, depression, anxiety, and bilateral hearing loss. The ALJ also found that these impairments, either singly or in combination, were not severe enough to meet or medically equal the requirements of any of the impairments listed in 20 C.F.R. § 404,

Subpart P, Appendix 1. The ALJ found that Hathaway had the residual functional capacity to perform light work with limitations that she can stand and walk two hours out of an eight-hour day, sit for six hours out of an eight-hour day, occasional climbing, should avoid factory floor noise level, occasional interaction with the public, and occasional fingering with her left, dominant hand. Based on the testimony of a vocational expert, the ALJ found that Hathaway could work as a distribution center mail clerk and retail store marker and was thus not disabled under the Act.

## FACTS

Hathaway, who was 42 years old when the ALJ issued the opinion in this case, has a GED, attended a trade school and earned a certificate in business computer training, and completed a three-month Certified Nursing Assistant training. She has work experience as a fast food worker, waitress, information clerk on the telephone, data entry clerk supervisor, janitor, merchandiser, and customer service supervisor. Hathaway claims to have been disabled since January 1, 2002 due to fibromyalgia, chronic pain in her back and hands, degenerative disc disease, hearing problems, sleep apnea, depression, and anxiety.

Hathaway complains of sciatic pain in her lower back and down both legs, in addition to constant pain all over her body from fibromyalgia. She sleeps about four hours a night due to sleep apnea issues. Hathaway suffers from fatigue, which causes her to take two or three naps a day for approximately one to three hours.

Carpal tunnel problems create a numbness in Hathaway's dominant left hand which causes her to drop things like cups and have difficulties gripping a pen. She has a similar, but less severe, numbness in her right hand. Hathaway used to type 80 words a minute but now types much slower and can only type for five minutes before she gets sharp pains in her hands and arms. Because

Hathaway is concerned she will not be able to hold the item, she never lifts more than ten pounds.

Hathaway's depression has become gradually more severe since 1992. She suffers from anxiety when she is in a closed room with people she does not know or when in a situation with too many unknowns. Hathaway's doctors often reported that she cried during the examination. She is rarely able to go to the grocery store alone and is usually accompanied by her grown daughter. Hathaway has poor concentration and is easily distracted.

Hathaway states that she must shift her position to relieve pain after five to ten minutes of standing and fifteen to twenty minutes of sitting. She can walk a block before needing to catch her breath.

Hathaway takes 16 medications a day which cause side effects of tiredness, dizziness, and memory problems.

Hathaway lives alone as a house-sitter for a friend who is remodeling a house. Hathaway's grown daughter helps with the grocery shopping and heavy housecleaning. Hathaway can take multiple days to complete a task, doing a little at a time. For example, it can take her all day to wash the dishes, a few at a time. Hathaway mows the lawn with a riding mower, taking two days to complete the job.

## DISCUSSION

I.      Hathaway's Subjective Testimony

Hathaway argues the ALJ did not give clear and convincing reasons to find her subjective pain and fatigue testimony not credible.

When deciding whether to accept the subjective symptom testimony of a claimant, the ALJ must perform a two-stage analysis. In the first stage, the claimant must produce objective medical

evidence of one or more impairments which could reasonably be expected to produce some degree of symptom. Lingenfelter v. Astrue, 504 F.3d 1028, 1036 (9th Cir. 2007). The claimant is not required to show that the impairment could reasonably be expected to cause the severity of the symptom, but only to show that it could reasonably have caused some degree of the symptom. In the second stage of the analysis, the ALJ must assess the credibility of the claimant's testimony regarding the severity of the symptoms. Id. The ALJ "must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony." Holahan v. Massanari, 246 F.3d 1195, 1208 (9th Cir. 2001). General findings are insufficient to support an adverse credibility determination, and the ALJ must rely on substantial evidence. Id. "[U]nless an ALJ makes a finding of malingering based on affirmative evidence thereof, he or she may only find an applicant not credible by making specific findings as to credibility and stating clear and convincing reasons for each." Robbins v. Soc. Sec. Admin., 466 F.3d 880, 883 (9th Cir. 2006).

The ALJ concluded that Hathaway was not credible because she refused to try to exercise, she had a lack of interest in pursuing recommended treatment for pain, and she refused counseling or other methods of helping herself. The ALJ reasoned that the failure to pursue recommended treatment undermined Hathaway's credibility.

Hathaway contends she refused counseling because she did not want to go to the only facility her insurance would cover. She notes that she has consistently taken and tried different psychotropic medications to help her mental symptoms. Hathaway claims that her pain makes it difficult to keep active. In addition, her insurance does not cover physical therapy.

The Commissioner notes Hathaway's only reason for not wanting to use the counseling facility is that she did not like it in the past. The Commissioner considers this an inadequate reason

for failing to follow through with recommended treatment, particularly because Hathaway admitted that her psychiatric problems are not adequately controlled.

I agree with the Commissioner. Erika Lemke, Hathaway's treating physician's assistant for well over a year, commented in several treatment notes that Hathaway took no initiative to help herself or to improve her situation. Even if Hathaway had a bad experience with the mental health facility in the past, the facility likely had more than one counselor available, as well as different counselors over the years. Moreover, Lemke did not think Hathaway's pain prevented any exercise. Dr. Bloniarz, a rheumatologist who diagnosed Hathaway with fibromyalgia, emphasized to Hathaway the importance of exercise to control her symptoms. I find that the ALJ gave a clear and convincing reason to discredit Hathaway for failing to pursue recommended treatment. See Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008) (unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment is a credibility factor).

The ALJ also found that Hathaway's subjective complaints about her pain were not supported by the medical evidence. In particular, the ALJ relied on Dr. Ogisu's opinion that she could sit for four hours of a work day and stand and walk for four hours of a work day.

Although the ALJ cannot reject subjective pain testimony solely because it was not fully corroborated by objective medical evidence, medical evidence is still a relevant factor in determining the severity of the pain and its disabling effects. Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001). The ALJ did not err in relying on Dr. Ogisu's opinion.

Hathaway argues that the ALJ put too much weight on Dr. Stuckey's opinion when the ALJ rejected her testimony of concentration problems.

Page 8 - OPINION AND ORDER

In his analysis of Hathaway's mental impairments, the ALJ summarized results from three psychological evaluations as well as Hathaway's reports to her treating physicians. The ALJ concluded that Hathaway's testimony of memory and concentration problems were not supported by mental status examinations which reflected normal attention, memory, and concentration. After testing Hathaway, Dr. Stuckey opined she fell in the normal cognitive range, even though she made two errors on serial sevens and one error on short-term recall. He also stated that it "remains unclear to what extent her complex physical health symptomatology and host of medications interfere with her psychiatric conditions." Tr. 401. Although Dr. Stuckey qualified his opinion somewhat, the ALJ did not overly rely on the finding, particularly because Dr. Stuckey's opinion was not inconsistent with the other psychological evaluations.

Hathaway contends the ALJ improperly rejected her testimony that her medication caused fatigue and memory problems. The ALJ noted that Hathaway testified about medication side effects but she had not reported any side effects to her treating physicians.

Although Hathaway did discuss her use of narcotic pain medication with various physicians, especially when she changed primary care physicians, the only mention in the medical record of a discussion of side effects from the medications is the one Hathaway noted she had with Dr. Radecki. If her dizziness, fatigue, and memory issues were as problematic as Hathaway claims, I would expect her to raise the issue with her doctors more often. In noting her failure to do so, the ALJ has given a clear and convincing reason to discredit her testimony.

Overall, the ALJ's reliance on the medical record was a clear and convincing reason to discredit Hathaway when her testimony was inconsistent with the record.

Lastly, the ALJ noted that Hathaway had denied drug use at various times in the treatment record but tested positive for methamphetamine. Hathaway acknowledged methamphetamine use in 2005 and 2006. The ALJ found Hathaway credible when she denied current drug use, but he found her credibility undermined by her inconsistent past reports to her treating physicians about drug use. I agree with the ALJ that Hathaway's statements concerning her past drug use–that DHS set her up and her boyfriend put methamphetamine in her drink–appear less than candid and support discrediting Hathaway's testimony. Tommasetti, 533 F.3d at 1039.

In sum, the ALJ gave clear and convincing reasons for discrediting Hathaway's subjective symptom testimony.

II.    Physicians' Opinions

Hathaway argues the ALJ erred in his treatment of several physicians' opinions.

The weight given to the opinion of a physician depends on whether the physician is a treating physician, an examining physician, or a nonexamining physician. More weight is given to the opinion of a treating physician because the person has a greater opportunity to know and observe the patient as an individual. Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007). If a treating or examining physician's opinion is not contradicted by another physician, the ALJ may only reject it for clear and convincing reasons. Id. (treating physician); Widmark v. Barnhart, 454 F.3d 1063, 1067 (9th Cir. 2006) (examining physician). Even if it is contradicted by another physician, the ALJ may not reject the opinion without providing specific and legitimate reasons supported by substantial evidence in the record. Orn, 495 F.3d at 632; Widmark, 454 F.3d at 1066. The opinion of a nonexamining physician, by itself, is insufficient to constitute substantial evidence to reject the opinion of a treating or examining physician. Widmark, 454 F.3d at 1066 n.2.

A.    <u>Dr. Ogisu</u>

Dr. Ogisu examined Hathaway on March 18, 2008.  In his opinion, Hathaway could sit for at least half the time during an eight-hour day, stand and walk for at least half the time during an eight-hour day, lift and carry at least ten pounds on an occasional basis, and perform gross and fine manipulation on an occasional, nonrepetitive basis.

Hathaway first argues the ALJ failed to give clear and convincing reasons for rejecting Dr. Ogisu's limitation that she could lift and carry at least ten pounds on an occasional basis. Hathaway notes that the ten pound lifting limitation is consistent with the opinion of the state agency medical consultant, Dr. Westfall.  According to Hathaway, her activities while house-sitting her friend's house are extremely limited and cannot support the conclusion that she can lift more than ten pounds.

The ALJ gave Dr. Ogisu's opinion some weight but, in light of Hathaway's testimony that she lives alone at her friend's house, takes care of the house, and mows the yard, the ALJ concluded that Hathaway could lift 20 pounds occasionally and ten pounds frequently.

Dr. Ogisu's opinion is contradicted by a second state agency medical consultant, Dr. Jensen, who concluded that Hathaway could lift 20 pounds occasionally and ten pounds frequently.  Thus, the ALJ can only reject Dr. Ogisu's opinion by providing specific and legitimate reasons supported by substantial evidence in the record.  <u>Orn</u>, 495 F.3d at 632.

The ALJ's interpretation of Hathaway's activities at her home are not supported by the record.  It is true that Hathaway is house-sitting for a friend, and she takes care of the house and mows the yard.  Hathaway provided information several times that it takes her a day or more to complete a simple task because she can only work on it for short periods of time.  This is true of

mowing the lawn, which takes her two days to complete with a riding mower. Hathaway's grown daughter helps her with the more strenuous housecleaning chores. I acknowledge that the ALJ discounted Hathaway's credibility, but no evidence disputes this statement, including the homeowner who said he did not know Hathaway's daily routine at the house. Moreover, Dr. Ogisu examined Hathaway. I conclude that the ALJ erred by failing to provide specific and legitimate reasons supported by substantial evidence in the record to reject Dr. Ogisu's opinion that Hathaway could lift and carry at least ten pounds on an occasional basis.

Second, Hathaway contends the ALJ failed to give specific and legitimate reasons for rejecting Dr. Ogisu's opinion that she could sit for at least half of an eight-hour day and stand and walk for at least half of an eight-hour day. Hathaway claims the medical records from other providers support Dr. Ogisu's opinion.

The ALJ again referred to Hathaway's activities in taking care of the home and concluded that she could stand and walk for two hours in an eight-hour day and sit for six hours in an eight-hour day.

The analysis from the lifting limitation also applies here. I conclude that the ALJ erred by failing to provide specific and legitimate reasons supported by substantial evidence in the record to reject Dr. Ogisu's opinion that Hathaway could sit for at least half of an eight-hour day and stand and walk for at least half of an eight-hour day.

Third, Hathaway contends the ALJ failed to give specific and legitimate reasons for rejecting Dr. Ogisu's opinion that she could perform gross and fine manipulation only on an occasional basis. The ALJ limited Hathaway to occasional fingering with her left, dominant hand and no limitation on her right hand. Hathaway claims the ALJ selectively quoted from Dr. Ogisu's findings and did

not correctly interpret the rest of the medical record.  She also argues the ALJ failed to point to any specific medical evidence that her problem is solely restricted to fine manipulation in her left hand.

The ALJ found that Hathaway's allegations concerning use of her hands were not credible in light of the findings on examination, referring to a May 2007 EMG study and November 2009 nerve conduction study.  He gave little weight to Dr. Ogisu's opinion because his examination revealed good manual dexterity bilaterally and give-away weakness with no evidence of radiculopathy.

In May 2007, Dr. Lou performed an EMG test on Hathaway to check muscle activity.  He found no electrophysiologic evidence for a neuropathy or radiculopathy in her left upper extremities. In November 2009, Dr. Habjan performed a nerve conduction study on Hathaway which found a compromise of the median nerves at the carpal tunnels, bilaterally, which was electrophysiologically mild-moderate on the right and very mild on the left.  A state agency medical consultant, Dr. Westfall, assessed no handling or fingering limitations in May 2009.

When examining Hathaway in March 2008, Dr. Ogisu found her grip was minimally decreased on the right and quite weak on the left, with manual dexterity good on both sides.  He concluded that Hathaway could perform gross and fine manipulation on an occasional, nonrepetitive basis.

Both Dr. Ogisu's examination and Dr. Habjan's nerve conduction study support a conclusion that Hathaway's limitations are more severe on the left side than on the right.  The ALJ did not err in discounting Hathaway's subjective pain testimony in which she explained that she limited the weight of items she picked up because she was afraid the pain would cause her to drop the item.  I

find that the ALJ gave specific and legitimate reasons supported by the record to reject Dr. Ogisu's opinion on Hathaway's limitation for gross and fine manipulation.

      B.    <u>Dr. Westfall</u>

The state agency medical consultant, Dr. Westfall, concluded that Hathaway could perform sedentary work, defined as occasionally lifting ten pounds. <u>See</u> 20 C.F.R. § 404.1567. Although the ALJ gave significant weight to Dr. Westfall's opinion, he only limited Hathaway to light work, with a 20 pound lifting limit, because of Hathaway's daily activities including caring for the friend's house in which she lives. Hathaway contends the ALJ did not provide a clear and convincing reason to reject Dr. Westfall's opinion because the ALJ improperly interpreted her daily activities in house-sitting for a friend.

I agree. The ALJ made the same error in rejecting Dr. Westfall's opinion as he made in rejecting Dr. Ogisu's opinion about Hathaway's lifting limitations.

      C.    <u>Dr. Hennings</u>

A state agency medical consultant, Dr. Hennings, reviewed Hathaway's medical records and concluded on November 23, 2005 that she could remember and carry out simple two-step tasks and could only have limited public contact.

The ALJ did not address Dr. Hennings' opinion. The only psychological limitation the ALJ gave Hathaway was to limit her to occasional interaction with the public.

The mail clerk job, DOT[1] 209.687-026, carries a reasoning level of 3; the store maker job, DOT 209.587-034, carries a reasoning level of 2. The DOT defines a reasoning level of 1 as having the ability to apply "commonsense understanding to carry out simple one- or two-step instructions."

_____

[1] Dictionary of Occupational Titles.

Dictionary Of Occupational Titles, Appendix C:  Components of the Definition Trailer, available at  http://www.occupationalinfo.org/appendxc_1.html#III.    Level 2 is the ability to apply "commonsense understanding to carry out detailed but uninvolved written or oral instructions." Level 3 is the ability to apply "commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form."  Id.

Dr. Hennings' opinion would limit Hathaway to a reasoning level of 1, making the jobs selected by the ALJ unacceptable if he adopted Dr. Hennings' opinion.  Accordingly, the ALJ erred by failing to address the opinion and either accept it or reject it.

D.    Dr. Brischetto

Dr. Brischetto performed a psychodiagnostic interview of Hathaway on October 8, 2005 and diagnosed her with major depression, an anxiety disorder, and rule out dysthymic disorder. Hathaway argues the ALJ erred by failing to address Dr. Brischetto's opinion that Hathaway could follow single and two-step commands, could attend and focus in a quiet office environment, and showed weakness in her memory.

I do not read Dr. Brischetto's report to limit Hathaway to one and two-step commands or quiet office environments.  He merely noted that she correctly performed one and two-step commands and could focus in the quiet environment in his office; he did not say she could not go beyond these limits.  I do agree with Hathaway that Dr. Brischetto's mention of her weakness on a brief screening for memory was more in the nature of a limitation.  The ALJ erred by failing to address the memory problem.

III.    Remedy

Hathaway asks the court to reverse the ALJ and remand for an immediate award of benefits. She notes that the vocational expert testified that a person limited to occasional handling as opined by Dr. Ogisu, in addition to the limitations the ALJ established in the decision, would not be able to perform any job in the national or regional economy. I did not find an error, however, in the ALJ's treatment of Dr. Ogisu's opinion about Hathaway's manipulation limitations.

The court has the discretion to remand the case for additional evidence and findings or to award benefits. McCartey v. Massanari, 298 F.3d 1072, 1076-77 (9th Cir. 2002). The court should credit evidence and immediately award benefits if the ALJ failed to provide legally sufficient reasons for rejecting the evidence, there are no issues to be resolved before a determination of disability can be made, and it is clear from the record that the ALJ would be required to find the claimant disabled if the evidence is credited. Id. If this test is satisfied, remand for payment of benefits is warranted regardless of whether the ALJ might have articulated a justification for rejecting the evidence. Harman v. Apfel, 211 F.3d 1172, 1178-79 (9th Cir. 2000).

The "crediting as true" doctrine resulting in an award of benefits is not mandatory in the Ninth Circuit, however. Connett v. Barnhart, 340 F.3d 871, 876 (9th Cir. 2003); Vasquez v. Astrue, 572 F.3d 586, 593 (9th Cir. 2009) (recognizing split within the circuit on whether the rule is mandatory or discretionary but not resolving the conflict). The court has the flexibility to remand to allow the ALJ to make further determinations, including reconsidering the credibility of the claimant. Connett, 340 F.3d at 876. On the other hand, "in the unusual case in which it is clear from the record that the claimant is unable to perform gainful employment in the national economy, even though the vocational expert did not address the precise work limitations established by the

improperly discredited testimony, remand for an immediate award of benefits is appropriate."

Benecke v. Barnhart, 379 F.3d 587, 595 (9th Cir. 2004).

This is not the unusual case in which it is clear to me that Hathaway is unable to perform gainful employment, even if I fully credited the doctors' opinions which the ALJ did not properly address. Thus, I will remand the case for rehearing to allow the ALJ to address: (1) Dr. Ogisu's and Dr. Westfall's opinion that she can only lift ten pounds; (2) Dr. Ogisu's opinion that she could sit for at least half of an eight-hour day and stand and walk for at least half of an eight-hour day; (3) Dr. Hennings' opinion that she could remember and carry out simple two-step tasks; and (4) Dr. Brischetto's opinion on Hathaway's memory problems.

## CONCLUSION

The decision of the Commissioner is reversed. This action is remanded to the Commissioner under sentence four of 42 U.S.C. § 405(g) for rehearing to further develop the record as explained above. Judgment will be entered.

IT IS SO ORDERED.

DATED this ___6th___ day of October, 2011.


   __/s/ Garr M. King_____
   Garr M. King
   United States District Judge

Page 17 - OPINION AND ORDER